Good afternoon, Your Honor. It's James Harris for the appellant in each of the two cases. As a matter of proceeding, what I think makes the most sense is for me to deal with the issues that are unique to the Stearns case first. There's some issues that overlap. I'll deal with them second and then I'll deal with the issues that pertain uniquely to Rescon third. Okay. And you'd like to reserve some time? Five minutes, please. Okay. With respect to Stearns, the judgment should be overturned because there's no evidence whatsoever in the record that satisfies either of the two theories of assumption on which the jury was instructed. And the trial judge denied JMOL solely on the basis of a standard that was not endorsed, incorporated in any of the instructions and the jury didn't rely on. I'm going in question. I do not understand you to have any problem with any of the instructions that were given. Is that correct? Correct. They were stipulated. Okay. So with respect Strictly a sufficiency of the evidence question. I would say an absence of the evidence question. With respect to expressive assumption, the portion of the instruction that mattered that was litigated between the parties was whether either the FDIC or Rescon had transferred the loan documents to Stearns. And there was absolutely no evidence that that happened. To the contrary, the evidence was undisputed that the documents, the loan documents were transferred to Rescon. The jury was instructed to that effect. What bothers me about this case, and this is a practical question rather than a technical question, is that the ownership on your side is all Stearns. That is to say the Stearns Bank owns the subsidiary that owns Rescon. So this is all Stearns money one way or the other. And the behavior of the Stearns Bank as the Citrus people were trying to interact and trying to get the final payout and so on was always with people who were employed by the Stearns Bank. They never hear about Rescon. So Stearns is acting, it says, merely as the servicer. But in fact, it's the Stearns Bank whose money is at issue. And they're interacting without saying, oh, by the way, you know, you got to know we're just the servicer. You know, if you've got a fight with whether we're actually supposed to distribute it, would you please talk to Rescon? You guys never did that. That did not happen, and it didn't need to happen because Stearns was the contractual servicer. And that's how the FDIC... But Stearns behaves as if it is not just the servicer. It behaves vis-a-vis Citrus as if it's not merely the servicer, but it's actually as the lender because it's being asked to do things that the lender would be responding to. And instead of saying, oh, you better talk to the lender,  Well, two points. Stearns was the loan servicer, as this court pointed out in its original opinion. Of course. And secondly, the theory that underlies your question is either an alter ego theory, an estoppel theory. That's also what bothers me about this case, because this is brought as a breach of contract case. Well, that's absolutely right. And Citrus was the master of its own set of theories, and it chose to proceed on two theories, expressed assumption as to which there was no evidence, and they proceeded, no evidence that Stearns was the entity of the document. The implied assumption depends on whether Stearns essentially received the benefits of the contract. Yes. Well, it received the benefits of the contract to the degree it had... I'm sorry? Accepted the benefits of the contract, yes. All right. And everything went through it, right? Yes. So any obligation that Citrus would have had would have been to give it to Stearns, right? To give... Who were they supposed to provide information to? To Stearns. Yes. And who was supposed to get the... If they were going to repay, who would they physically repay? Stearns, I take it. Yes. The money was to go to Stearns. So insofar as the relationship between Stearns and Citrus, Stearns... Didn't Stearns get whatever benefit it was obligated to get as to that relationship? No. The evidence, the undisputed evidence was that if Stearns had received either interest or principal payments... It would have handed it over to Riskin. I understand that. And of course, there was nowhere to hand it because it was a single guy sitting there. So he would have just put it in a different bank account. No, no. Well, you're assuming that... No. Well, you're assuming that there was not adherence to the corporate formalities and you're also assuming in a way that the fact that Riskin had a participation obligation to the FDIC and had to remit 80%... I'm not sure of the percentage, but a percentage of its receipts to the FDIC. But what I'm trying to isolate... Yes. Without getting into that. Yes. The problem, I understand there's a problem, is whether Stearns has an independent role here as to which it has independent obligations and independent benefits and whether it did in fact get all of the benefits that went along with the obligations it had. Well, as we pointed out in the briefs, we could identify four major benefits that accrued under the loan documents. One was enforcement of the guarantees. And as you know from the companion case, Riskin sued on the guarantees in its own name. Another was exercise of foreclosure rights. And again, as you know from the companion case, the notices of sale were in Riskin's name and Riskin caused the foreclosure sale to happen and Riskin was the successful bidder. So as to two of the four major benefits, we know that it was Riskin and Riskin alone that got the benefits. With respect to any payments of principal or interest, none of those happened. And the evidence was undisputed that under the contracts, which the plaintiff would simply like to toss out the window, but under the contracts that the FDIC... Which they never saw. That's what's disturbing. And I understand what you're saying about that's a different theory, not the theory they went on. But they never... And while these incidents were going on, they didn't know about that contract. That is true. That is true. But they're basically asking you to disregard the contracts and conclude that... They're asking you to disregard the representations that were made to them about who they were actually dealing with. No, no. Right, right. That's true. And that's a totally different theory of assumption liability. That's somewhat akin to the cases that the trial judge cited that were... Something like an apparent authority claim. Well, it's not apparent authority. I think it's alter ego, estoppel, or it's like the corporate successor doctrine cases that the district court relied on, where somebody buys... A corporation buys another corporation, and the question is whether there's an implied assumption there. And in those circumstances, you do look at conduct and manifestations of intent and whatnot. But that was not part of the case on which the jury was instructed. And had the jury been instructed on those kinds of issues, and we knew from the get-go that that was not Citrus's theory, had that been Citrus's theory, we would have put on a very different case. We would have put on experts from the FDIC about how they structure their agreements in a particular way. We would have emphasized the provisions of the contract that prohibited Rescon from transferring anything to Stearns without the FDIC's consent. We would have put on evidence that Stearns understood it could not be the lender, because if it arrogated the benefits of payment to itself, it would basically be defrauding its regulator. It has to deal with the FDIC, and it's not going to start stealing money from the FDIC, because Rescon was entitled to it, and Rescon had to remit a substantial portion to the FDIC. So if you look at the two theories on which the jury was instructed, it is quite clear that there's no evidence that supports either one of those two theories. The trial judge didn't find that the evidence supported either one of those two theories. Plaintiff in its... Apparently the FDIC wrote a letter to Citrus saying that it had assigned a loan to Stearns. Yes, that was very loose language. According to you, it was completely inaccurate language. Well, it wasn't using the term lender in the sense of the lender's obligations under the contractual documents. Now, what letter are we referring to? There are several letters. Excuse me. Is this the February 13 letter? Yes. Yes. Okay. Now, I don't want to help you try your case or your appeal. I'll take all the help I can get. But you misquoted that letter. You quote that letter as saying we have assigned this to Stearns. No, they say we have assigned it to a lender, and then they say pay money to Stearns. They never say that Stearns owns... That letter never says that Stearns owns a loan. That's right. But your brief misquotes the letter to say that. I appreciate the help. I didn't realize that I was imprecise there. I think what you did, you probably pulled that language out of a brief purporting to quote the letter without going back to the letter. I pulled it out of the district court's order. That's where I caught that. But the letter does not say we have assigned the loan to Stearns. It says we have assigned it to a new lender, and then it says pay money to Stearns. Yes, that's absolutely correct. So to put a bow on this point, as to the two theories that went to the jury, there's no evidence that supports either. There's no argument that supports either. And the judge solely relied on a theory that was not part of the instructions, and I believe this court cannot affirm. You know, before your time runs too far, you might want to get to the case where there's actually more money at stake, which is to say the Rescon case against the guarantors. Okay, with respect to Rescon, I think the judge made two legal errors with respect to both the waiver doctrine and with respect to claims preclusion. Issue preclusion rather than claim preclusion? Yes, excuse me. Issue preclusion. With respect to issue preclusion, the district judge correctly recognized that all of the predicate criteria for issue preclusion were met, that the main core of the bad faith defense had been litigated. Well, I'm not sure about that. I mean, no one provided or discussed the earlier case very much, and I looked at those documents. My understanding is that there were three grounds advanced in this case as to bad faith. Yes. And that only one of them was tried in the earlier case. Let's make sure we're on the same page as the three grounds. There was the funding. Well, in the earlier case, there was a breach of contract claim. Based on that. And in this very strangely worded verdict form that said Stearns and or Rescon, which suggested that at that point everybody was treating them as somewhat fungible. And then there was, I understand that in the end all the money was judged against Stearns, not Rescon. There was never really a judgment, however, that Rescon, there was never a judgment in favor of Rescon as I understand it. Well, there absolutely was. Judgment was entered in Rescon's favor on Citrus's claims against it. And Citrus's. And the judgment says that? I didn't see the judgment say that. Yeah, the Rescon. I didn't see anything of that. Yes. It kind of ignored them. Otherwise, we couldn't have taken the first appeal. The case wouldn't have been done. There were two separate, there were two judgments in the Stearns case. All right. Just to go on with my major point. So then the, but there were two other issues raised here which were claimed to be indices of bad faith. Yes. One was all of what we were talking about before, i.e., you never told us about Rescon, you represented that you were alone and so on. Yes. And there was a second one which I can't now. Wrongful. The allegedly inaccurate redemption figure. Oh, right. In the notice of fail. Now, those two were not litigated in the earlier case, were they? Well, there was a fraud claim in the earlier case. Right. Citrus accused both Stearns and Rescon of fraud. That case went to the jury, and the jury rendered verdicts in favor of both Stearns and Rescon's on that count. And. Was that based on the same problem? Well, no, but that doesn't matter because. Why not? It's just an issue of preclusion we're talking about here. Well, it may. Well, let me say this to a hypothetical. All right. Suppose I'm right. Suppose that there were three possible bases here for finding unclean hands, and there was issue of preclusion as to one of the three. Then what? The one that the judge characterized as the major one. Yeah, but what I want to know is, is that issue of preclusion? Yes, and a new trial. Or is it only issue of preclusion as to the one thing? And since there were two other possibilities, we say, okay, fine, it still stands. Or do we say it doesn't stand? What do we do then? What you do then is, because the district, excuse me, the district judge correctly recognized. I might say that nobody, neither of you mentioned this or dealt with it. And you all, for some reason, acted as if there was only a breach of contract claim at issue here, until you get to the next question of harmlessness, in which then you start switching gears, or the other side starts switching gears and going to the question of the misrepresentation. So I got very confused, which is why I bothered to go back and see what actually happened. Well, with respect to the question you're asking, the district judge recognized correctly that the failure to fund was the guts of the bad faith defense. He said that in order after order. Everybody approached the case as if that were the case. And if the nonfunding issue is the subject of preclusion, then I think at the very least you have to have a new trial. If you take a look at the other two aspects, the wrongful, the wrongful, allegedly wrongful redemption price, that has nothing to do with the bad faith claim as a matter of law. As a matter of law, the guarantee liability was created the moment that Citrus defaulted. The allegedly improper redemption figure occurred four years later. So it has nothing to do with the acts that give rise to the claim. If I can interrupt for just a moment, this is in a sense a prior question. What's the standard by which we review a refusal of a district judge to give issue preclusion effect to a prior judgment? Is it de novo or is it abuse of discretion? I think it's de novo because you're basically... And what's your case for that? I don't have a case for that. I was going to reason to that because you're basically dealing with... ...in which the Supreme Court says that federal courts can do non-mutual collateral estoppel, that is to say issue preclusion in a non-mutual case, that the district judge has a lot of discretion. The district judge has discretion in the limited sense that he can conclude that the equities disfavor application of non-mutual collateral estoppel. That's not what happened here. Here the district judge may... Well, not as it pertains to this case because the district court's rationale was concluding that it wasn't enough to just demonstrate a qualifying relationship. You also had to demonstrate that there had been active... You had to demonstrate that the guarantors had subjective awareness of the significance of the prior case. And that was the only reason why he concluded preclusion was not appropriate. And that was an incorrect legal conclusion. There's nothing in any of the prior case law that imposes that additional criterion. I had always thought, and there is certainly some case law so suggesting, that the paradigm instance of privity is assurity and being insured or the guarantor. Yes. So under those circumstances where essentially the guarantor is saying, I'm in this person's shoes and I will cover for anything that they're liable for. And if they're not, then it seems to me that, I guess what I'm saying is that I think even the notice requirement should be lesser under these circumstances. I think the notice requirement should be lesser. And you don't want to create a rule where sureties can relitigate claims. I mean, that would be a horrible result systemically. And this Court in the Fireman's Fund case said that because its liability is merely derivative, the interests of the guarantor and the principal are virtually identical. So I think Judge Carter simply made a mistake in imposing that additional requirement. And because he found — That's a problem that I pointed to and I'm still bothered by it. Oh, yes. I'm sorry. Where if you have multiple bases for something. Yes. And one is issue precluded. Yes. But the others are not. And you go to the jury and the jury finds bad faith. We're supposed to assume that they found it on the inconsistent basis rather than on the consistent basis. With respect to that, as to the redemption figure, as I said, as a matter of law and logic, that has nothing to do with the bad faith defense as the jury was instructed. So it doesn't provide substantial evidence. With respect to Ruska not knowing. I think that's the most likely for what they would think was really bad faith. I mean, in terms of where they would have thought, you know, these people were really playing around. It would be that. That's quite possible. And as I say, it's quite irrelevant. Well, it may be something — it may be hard to make a connection as to why it would matter very much, except in terms of whether you're just really not somebody who should be getting the benefit of the court's — of our verdict. We just think you've behaved terribly and when — But the legal question before you is what — You don't have clean hands. I'm sorry. I didn't mean to interrupt. The legal question before you is whether, as a matter of law, that allegation has any legal significance under the case as the jury was instructed. And the jury was instructed the bad faith has to relate to the matters giving rise to the guarantee claim. It's certainly related to it. Pardon me? It's certainly related to it. No, it had nothing to do — it didn't give rise to it. Those are the key words, giving rise to the claim. I mean, isn't there — I mean, part of the problem here is that the jury in the first case seemed to have been confused about the relationship between the two parties. So, therefore, they let Rescon out, and now it turns out that Rescon, in your view, was really the only possible bad actor. Well, Rescon was the only possible party for whom liability could have attached. But no one told that to the jury in the first case. No, that's Citrus's own fault. They made a conscious decision to conflate Stearns and Rescon at the first trial because they wanted to get to Stearns' presumably deeper pockets. But whether it's their fault or not, if the jury the first time around was confused and you half conceded that they might have been, it's rather hazardous to give issue preclusion effect to the jury verdict in the first case. No, I didn't concede that the jury might have been confused. I was saying even on the premise with which I thoroughly disagree that they were confused, there is preclusion because there is a judgment in Rescon's favor with respect to the exact same claim that's being litigated on the bad faith defense. Okay. Why don't we hear from the other side? We've taken you over time, but we will give you a chance to respond. Thank you. Good afternoon. I'm Everett Skillman. May it please the Court, I represent all the appellees in this action. The question of alter ego is something that this Court does not need to go to. Oh, I can't. If you go to the participation agreement that Rescon is relying on that appears in our supplemental excerpts or record at page 50, I mean at page 298, it says at section 412 that the company, which was to be Rescon, was supposed to send a hello letter to the borrower. That hello letter turned out to be the February 27, 2009 letter signed by Mr. Norm Scalicchi, the CEO of Stearns Bank. And so where's that letter? I may or may not have it in this letter in front of me. Where in the excerpts? It's in the excerpts. It was trial exhibit 68. It's in Stearns Bank's excerpts at page 258. It was trial exhibit 68 in the lower court. The letter starts out, welcome to Stearns Bank! Exclamation point. And it says that they're going to get the job done.  So are you saying so they're automatically alter egos? Is that what you're saying? I'm saying they chose to identify themselves as Stearns Bank. They chose it. Rescon. Rescon. And or Mr. Scalicchi chose to disavow that stack of papers that were supposedly created on February 5th. He himself signed this document. It says, we are anxious to meet with you about the specifics of your loan. As your new lender, we plan to make every effort to ensure a smooth transaction. Yeah, my problem with that is the theory on which you tried this case. I think you had a lot of better theories, given your evidence. Well, there are several theories. I mean, even under the federal law that is relied upon. You tried this case on a theory of breach of contract by Rescon. As Stearns having assumed Rescon's obligations. But it seems to me the argument that Stearns, as servicer, has stepped into the shoes of Rescon by accepting the benefits. I have problems seeing that the evidence supports precisely that theory. That's my problem with this case. Yes. California Civil Code 1589 and the Melchior case specifically state that a party can be held liable for breach of contract if they voluntarily assume the duties under that contract. No, if they assume the duties and the benefits. It sounds like they might have assumed. What benefits did they assume? Here are some of the benefits that they assumed. They voluntarily assumed the duty. That's duties. What about the benefits? Okay. Pardon me for saying they. Stearns voluntarily assumed the benefit, accepted the benefit, of being the decision-making authority as to whether a draw request would be funded or not. How is that a benefit? That is a benefit because just as this Court has decision-making authority on this case, they are. And so what do I get out of making a decision? I get to go home. Well, you have more power of this case than I do, Your Honor, with all due respect. But I'm trying to figure out where's the benefit that Stearns assumed when acting as servicer? If you were to apply Stearns Bank's paradigm to this case, they said that they have the power to insert Stearns Bank policy into the terms of the contract. If they have the power to unilaterally change the contract, that is a benefit. They definitely. Unilaterally change it, meaning? In other words, they told. I see it was the one who did it. No, Stearns themselves told Citrus, you are to use these particular kind of forms. You are to reformat all of your prior draw requests to conform to this particular format. That's part of your list of bad acts by Stearns. I get that. But I'm having trouble seeing how that's a benefit within the meaning of California law, which means they have implicitly assumed the obligations and benefits of the contract. Okay. With regard to two of the benefits that Mr. Harris identified, he said foreclosure rights. Stearns did try to exercise foreclosure rights. Yeah, but it couldn't. And the actual foreclosure was done by Rescon. Or in the name of Rescon. Principal and interest. Stearns themselves demanded the principal and interest. Did they ever get any? They did not get any. Well, it doesn't sound like they got much of a benefit. As far as the enforcement of the guarantee is concerned, the only way that that could have been done is if there was a foreclosure, which did happen. And the only way that foreclosure happened was by Stearns employees undertaking on themselves the ability to act on behalf of FNBN. But then it was Rescon that actually went after the garage whores. Well, it was undertaking most of the documents were signed by a fellow named Mr. Hosier, who was a vice president of Stearns Bank, quasi on behalf of FNBN-Rescon. So they did have the benefits under the contract. They had the right to send an inspector to the property. And they did send an inspector to the property. My client did not have the duty to just allow anybody onto the construction site. But this inspector did have the right, pursuant to what Stearns ordered, to come on and see what's going on in the project. But if they had been the officer, essentially a servicer, essentially an agent, they could have done all that. Qua agent. I'm glad you brought that up, servicer. Okay. The construction loan agreement does not contain any provision allowing for a servicer. If there is going to be a separate servicer, if there's going to be a splitting of the functions of lending and servicing. But the FDIC agreement does, right? That split did not occur until after the supposed assignment to Rescon. In other words, the servicing agreement that is referenced in my opponent's briefs says that that servicing agreement was entered into solely between Stearns and Rescon. But I thought that the transfer to Rescon specifically allowed a servicing agreement. Well, that doesn't mean that it was consummated. And silence between a lender and a borrower with respect to servicing. Assigning off a servicing responsibility is such a common proposition that it does not surprise me that just an ordinary lending agreement between lender and borrower, once you sell the loan or even if the original lender holds onto it to have somebody else do the servicing, that's clearly within the expectation of the parties as a possible thing that could happen. I agree in most instances. This is a construction loan, however, Your Honor. Many more duties were incumbent upon the lender with respect to the processing of this loan. In other words, there was the review of drawback. But they didn't consent to begin with to the FDIC taking over or to the FDIC transferring the rights to Rescon. And I know you sort of complained about that, but your opponents say that it's permitted under federal laws to sort of preempt it. Well, I was thinking about that very aspect of the case, Your Honor. And it seems pretty clear that Mr. Shaddix and Citrus Eldorado impliedly consented by virtue of sending a draw request to Stearns, sending draw requests to FDIC. In other words, if they did not consent to those entities being the lender on the loan, then they wouldn't have sent draw requests to them. Mr. Shaddix's testimony, I think, could be best understood as him stating that he did not sign a piece of paper. I mean, we're kind of wandered into the second guarantor case now. And as I said before, it seemed to me that you had several unclean hands theories. But while I think the one that may have had the most appeal to the jury was all of the things we've been talking about, i.e. they said they were the lender and so on, what actual consequence of that was that to Citrus? I mean, what difference does it make who was the lender? It makes a big difference. Why? One entity had money, the other didn't. If Citrus was told that Rescon was in fact the lender, Citrus would have said, well, do they have the ability to fund our draw requests? We have $609,000 left on this loan. Do they have $609,000 in the bank somewhere? Because Rescon was a creation of the FDIC and Stearns had some preexisting existence. Is that why? Rescon was not even a bank. It was a creation of FDIC, as I understand it. I believe so, yes. And Stearns was an existing bank? Stearns was an existing bank with billions of dollars of assets, Your Honor. I see. And Rescon was held by this SPV1 or whatever it is, which is a wholly owned subsidiary of Stearns, correct? That's what the allegations are by Rescon, Your Honor. And what do you say? I have not independently verified that one way or the other. All I got to go on is what's in the second amendment complaint. I don't believe discovery was undertaken on that issue as far as the corporate hierarchy. Okay. But to answer your question with regard to bad faith, I think. Well, it's a pretty good answer. I never saw it before. It wasn't in your briefs. But anyway, go ahead. I hope I put it in my briefs. There were several acts of bad faith on the part of Rescon, Your Honor. Under California law, the Cates case, the Karma case, the Goose v. Bechtel case, the issue is did one party do things or say things which frustrated the other party's right to receive the expected benefits of that contract? In this particular case, the contracted issue was the guarantee contract. Under the guarantee contract, it specifically says, as it does in basically every guarantee contract in the State of California, that these guarantees are being made for the purpose of inducing the lender to disperse loan proceeds. Rescon never did that. Rescon never dispersed loan proceeds. They just didn't. Even though they had a duty to do so because there was a fully documented draw request. What's the relevance to that exactly? How is that relevant to where we are now? Because that's the governing rule under Cates, Karma, and Goose. No, what I want to know is, in other words, if they never did that, then what? Then what? Does that go to the clean hands or lack of clean hands? That shows that the purposes for which the guarantors entered into the guarantee contracts were never satisfied. And, you know, there were several ways and reasons for which there was inability or refusal on the part of Rescon and or Stearns to disperse the loan proceeds. And several of them came about after the 2011 trial, Your Honor. There were several requests on the part of Citrus Eldorado saying, please give me a full accounting of what this $20 million figure consists of. That question was never answered prior to the foreclosure, never. And those letters and those requests occurred after the first trial, meaning those are facts that were never litigated. And, yes, the jury in the second trial was presented with that evidence. So I would submit that, first of all, the guarantee contracts were never at issue in the first trial. So that's one reason why issue preclusion doesn't work. Second reason issue preclusion doesn't work is because you have new facts and new evidence that came about. In certain matters, but not as to whether it appears, not as to whether Rescon had some obligation it didn't fulfill to fund those requests, because that was the breach of contract and the judgment against Rescon in the earlier case was zero. In the notices of default and in the notice of trustee sale, it says, if you have any questions, please contact Rescon. Citrus contacted Rescon, got no results whatsoever, no valid responses whatsoever. That must have been tried in the first case. See, that's the problem. We don't even know. I mean, no one has really bothered to tell us in any detail at all what was actually tried in the first case. But there was a judgment that seems to go to the breach of contract, and everybody seems to think the breach of contract was about not dispersing this money, presumably including not answering questions. So it appears that there was a judgment in favor of Rescon as to some chunk of what you're claiming was the bad faith. This is where I part ways with Mr. Harris, Your Honor. Part way from whom? This is where I part ways with Mr. Harris. Okay. I do not believe that Rescon was a prevailing party in the first trial. There were... Was there a judgment in their favor? There was a judgment in nobody's favor. Nobody was allowed to recover costs in that first trial. There was a judgment that Citrus shall not recover on breach of contract or fraud. And there was also, in that same judgment, a judicial declaration that, and I'm trying to recall the exact causes of action here, that Rescon shall not recover for appointment receiver, specific performance, and I believe it was declaratory relief, Your Honor.  But in other words, everybody lost as between Citrus and Rescon. No prevailing party. So for Rescon now to say that we have issued preclusion by virtue of a judgment that was issued years before many of the relevant facts came into existence... Before relevant facts were presented to a jury. I mean, the facts were there, just the evidence had not been presented. The facts came into existence in 2012 and thereafter, Your Honor. Some of them. The first trial was in August of 2011. You're saying some of these facts. Some of the facts. So which of the facts that actually occur then after the first judgment? There were requests by Citrus for full accounting of what this $20 million redemption figure consists of. We believe that $20 million figure is completely inflated, and Rescon never explained what it was. They just didn't. I'm looking at the judgment in the first case. It is very peculiar. The jury returned a verdict as follows. $16 million in favor as a plaintiff. Breach of contract by Stearns. It doesn't mention Rescon. Second cause of action, misrepresentation. Fraud zero. Third cause of action, intentional interference zero. Fourth cause of action, national interference by Stearns. No mention of Rescon. $14 million. $30 million. And then a total judgment in favor of the plaintiff, El Dorado, and against the Fed and Stearns Bank on the amount of $16 million. Period. It doesn't mention Rescon at all. Is that the only piece of paper there is? I believe there was a judgment that talked about Rescon. That's called judgment. That piece of paper is called judgment. There was a judgment. It was a verdict. But the judgment is what I just read you. There was a judgment in the record dated February 2012, Your Honor. Another judgment? Because this one is August 26, 2011. I believe that's the verdict. No, it's the judgment. I can read.  Okay. I apologize. Yes, I apologize. Yes. It was also a verdict. Actually, I believe there was an amended judgment. Okay. Judge Carter issued an amended judgment that talked about Rescon's claims in its counterclaims, and it talked about Citrus's claims in its complaint. And the trial ended up as between Citrus and Rescon that nobody recovered anything. You were earlier responding to, I think, a question from Judge Fletcher about the list of things that happened since the first judgment, and you said, one, a request for an accounting. Anything else? Yes, Your Honor. Well, the wrongful inflation of the redemption amounts in the notices of default there were several notices of default that were issued after the first trial, Your Honor. There were several loan statements that were issued after the first trial that says, pay $12 million to Sterns, I mean, without any mention whatsoever of Rescon's, which, okay, do we have two people that we're obligated to pay money to? There was... I did find the other judgment, by the way. There were several things, Your Honor, but the point is that there were facts that Now, the district court ruled against issue preclusion only on the ground that the relationship between the guarantor and Citrus was insufficient in itself, right? Yes, and I still believe that, Your Honor. Why? And I understand your viewpoint, Your Honor, and I have to defer to that. I guess I just came out of law school with the notion, and I gather that it seems to be held up by a fair number of cases, that the paradigm of privity for issue preclusion purposes is a surety or guarantor situation. But privity is only one element, Your Honor. There's much more that has to be established. Well, I know, but I said that with regard to the relationship question... Yes. ...which is the only thing that Judge Carter relied on. I would think that that relationship itself is enough. Well, the facts are clear, Your Honor. Mr. Shaddix was one of the guarantors. He's also the managing member of Citrus. Those are just the facts. All right. As far as whether that constitutes... What is it you still believe? You still believe there are some, that they're not sufficiently in privity for issue preclusion purposes? Well, I think the privity question is also related to what's at issue in the first trial. If the guarantee contracts are not at issue in the first trial, then... Well, that's a question of whether the same issues were done or not or covered. But I think it's linked, Your Honor. I think privity and identical issue, I think, are linked because if... Well, you know, you could also say we can affirm on any ground. You can affirm on any ground, Your Honor? I'll say that right now, then, before I say anything else. But my point is, Your Honor, if the guarantee contracts are not at issue in the first trial, is Mr. Shaddix really in privity with Citrus? Because Citrus, at that point, is not litigating anything. But that's always true in a surety and guarantor situation. It's precisely because what you're guaranteeing is whatever obligations the other person has. Rescon had a counterclaim. The guarantee contract was not part of it. If they wanted to make the counterclaim to include the guarantee contract, perhaps they could have done that. But they chose not to. Were the guarantors parties? The guarantors were not parties in the first trial. They could not have made a counterclaim. They might have been able to bring them in as additional parties, but it wouldn't have been a counterclaim. True. But I'm speaking specifically with regard to Rescon's counterclaim. Rescon's counterclaim, and they did not bring a third-party complaint either, Rescon's counterclaim did not include anything having to do with a guarantee contract. It had to do with... Because that case wasn't about the guarantee contract. Anyway. I think I got it. Okay. Thank you. Let's put two minutes on the clock for response. Let me refer you to page 763 of the excerpts where the instructions from the first trial are laid out. And the case went to the jury on two breach of contracts theory. The defendants, quote, failed to fund the last draw and failed to sell the loan, the second being irrelevant. So the underlying issue, non-funding, was litigated. It was the key issue in the first trial. I'm sorry. I'm on page 762, 763. 760. Number 14. What are you referring to? I hope I have the right site. Oh, shoot. That's the wrong page. That's the page to the stipulation. One of the pages immediately prior to that, there's an instruction on the theories on which the case went to the jury, and one of those theories is the defendants, quote, failed to fund the last draw. Okay. But you don't know what page that's on. Okay. Okay. Well, we can go. I'm sorry. Some of the time I can't even read my own notes. Well, make your point, and we may be able to find it later. Yeah. Yeah, I'm sorry. I'm not finding it. And that's also reflected in this court's prior opinion, I believe. But the instruction was, and the case went to the jury on the theory that the defendants failed to fund the last draw. And there were two judgments entered in the Stearns 1 case. Back down there. And the second one explicitly. It would have been really nice if anybody had told us anything. I'm sorry, I couldn't hear you. It would have been nice if either of you had told us anything much about the other case. There's no way to do an issue of preclusion analysis without knowing what you were trying to issue from. And it was completely mysterious. No, I'm sorry. I thought it was clear enough by pointing out that the failure to fund was the main theory in the prior case. Well, that's your view, but we are entitled to be able to judge that. Right. And the instructions are there. The one other point that I would like to make is that there are two alternative grounds for reversal as to Rescon. There are two alternative grounds for reversal as to Rescon. One is the waiver question. And I think Judge Carter, and I'll be very brief here, misread the Del Porti case. It doesn't preclude enforcement of the waiver here. He thought the waiver. Pretty close. I mean, the waiver language was pretty similar. Well, the waiver. What was the difference? I'm sorry. Okay, go ahead. The waiver language is actually not even included in the Del Porti case. Well, the impression one gets then is that it's similar. But what Del Porti said is that the waiver there, the defense there, wasn't squarely encompassed by the waiver, and it wasn't going to construe the contract broadly. It wasn't explicitly encompassed by the waiver. Well, yes. That's different than squarely, right? Well, it's important if you take a look at Civil Code Section 2856, because 2856, which is the civil code provision, and I'm hoping I'm giving you the right number, 2856 is the civil code provision that gives guarantors the right to waive their defenses. It first lays out in Section A three categories of statutory defenses that can be waived, and then in Section B it says no particular language is required. The problem, I think, and I think this is what the case was reacting to, is that the clean hands doctrine is really as much a protection of the court from benefiting scoundrels as it is a protection of the parties, right? So, therefore, one would want to be extremely miserly about allowing it to be waived. Well, the clean hand, the unclean hands defense here is basically equivalent to a breach of contract defense. Partly. Pardon me? Partly. Well, in so far as the non-funding, yes. Yes. In so far as the non-funding. Partly. So, I mean, so I suppose you could end up, with respect to the non-funding, the non-funding shouldn't have gone to the jury either as the result of the waiver or as a result of preclusion. And the other acts, by and large, don't satisfy the instructions because they took place later. I mean, there are two categories. Either they took place either after the first trial. Actually, they took place after the guarantee liability attached, in which case they're irrelevant, or they took place before, in which case they were litigated in Stearns 1. Okay. Thank both sides for their arguments. I didn't mean to exhaust the court. You've had a long day. No, that's. Exhaust it before you exhaust it. It's been a long day for everybody. Thank you. In this case, both cases, both appeals now submitted for discussion. Thank you very much. I appreciate it. All right.
judges: Tashima, W. Fletcher, Berzon